**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CARLOS SEBASTIAN ZAPATA RIVERA,

      Plaintiff,

v.

UNKNOWN FEDERAL AGENT JOHN DOE,

      Defendant.

C.A. No. 25-13850-MRG

## MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

The United States is not a party to this litigation and has not moved to intervene. Yet the United States has filed a motion seeking extraordinary relief: a proposed protective order requiring permanent anonymity for the defendant law enforcement agent throughout the entire lifespan of the litigation and forever thereafter. The proposed order would apparently cover all information produced or used by anyone, and would apparently restrict the activities and communications of parties and non-parties alike. The proposed order would even require the Court's staff to retroactively seal filings that have already been on the public docket for over a month.

Agent Doe is a civilian public employee. His job is to enforce civil immigration law. This case alleges he broke the law while performing his public duties in a public place, resulting in serious harm to Mr. Zapata Rivera. The United States does not cite a single case in which *any* court *anywhere* has *ever* granted a public employee permanent leave to proceed by pseudonym in such circumstances. And, although the plaintiff and his counsel are very sensitive to all safety concerns, the purported concerns raised by the motion are clearly outweighed by the public interest in open and transparent litigation regarding alleged misconduct by civilian law enforcement

1

personnel performing public duties in a public place.  The Court should deny the United States's motion.

## BACKGROUND

Agent Doe is a public employee who, at all relevant times, was performing public duties in a public setting.  Specifically, he is believed to be a civilian federal employee in the Enforcement and Removal Operations ("ERO") division of U.S. Immigration and Customs Enforcement ("ICE").  *See* Compl. (D.E. 1) ¶46 & Fig. 4; Mot. for Early Discovery (D.E. 8) at 4-5.  ERO conducts civil immigration enforcement in the interior of the United States.[1]  The complaint alleges, in summary, that Agent Doe strangled Mr. Zapata Rivera unconscious while arresting him during a vehicle stop last November in Fitchburg, Massachusetts.  *See* Compl. (D.E. 1) ¶¶29-65.  These events occurred on a public street and were video recorded by local police, by various bystanders, and probably by some of the federal agents, as well.  *See, e.g.*, *id.* Figs. 4-7.

When Plaintiff initially filed his complaint on December 15, counsel identified the defendant by a pseudonym because Agent Doe wore a mask and took other steps to hide his identity during the encounter.  *See* Mot. for Early Discovery (D.E. 8) at 3-4.  Plaintiff then promptly filed a motion to take early discovery to identify Agent Doe in order to effectuate service. *See id.* That motion included a summary of the information presently available concerning Agent Doe's identity, including a potential first and last name.  *See id.* at 5.  Although the government declined to identify Agent Doe at the time, it now concedes the information in Plaintiff's motion "is

---

[1] *See, e.g.*, *Georgia Latino Alliance for Human Rights v. Deal*, 793 F. Supp. 2d 1317, 1344 (N.D. Ga. 2011) (quoting declaration of ICE's Executive Associate Director for Management and Administration: "ICE consists of two core operational programs, Enforcement and Removal Operations (ERO), which handles civil immigration enforcement, and Homeland Security Investigations (HSI), which handles criminal investigations."), *aff'd in part and rev'd in part*, 691 F.3d 1250 (11th Cir. 2012).

sufficient to identify Defendant Doe." *See* Prot. Order Mot. (D.E. 11-1) at 2 n.2. Undersigned counsel served that motion on the U.S. Attorney's office on January 23, the same day it was filed. *See* Mot. for Early Discovery (D.E. 8) at 9 (certificate of service). No one requested that the filing be sealed at that time, or at any time prior to the United States's instant motion.

Agent Doe has not filed any motions or pleadings in this case. No counsel has ever appeared for him. Although the U.S. Department of Justice is not presently representing him, *see* Prot. Order Mot. (D.E. 11-1) at 2 n.1, there is nothing stopping him from engaging a lawyer to file motions on his behalf, as would be expected of any litigant. If Agent Doe chooses to remain silent, he may do so until he is served and his obligations under the Rules of Civil Procedure begin to vest. That choice is his.

Although Agent Doe has chosen to remain silent, the United States itself has now filed a motion for extraordinary relief: an order requiring total and permanent anonymity for the defendant agent.[2] However, there is no apparent basis for the United States to participate in this case at this time. The United States is not a party, has not moved to intervene, and has not sought to join the case by any other mechanism. The United States acknowledges that its filing is "unusual," *see* Prot. Order Mot. (D.E. 11-1) at 2 n.1, yet offers no developed argument as to why its participation is permissible. Indeed, the United States's motion does not even include a declaration from Agent Doe: there is nothing in the record to prove he authorized or requested this filing on his apparent behalf (by lawyers who do not currently represent him), nothing to articulate the nature and specifics of any current safety concerns he might have, and nothing expressing a desire for personal anonymity now or (as the motion requests) for all perpetuity.

---

[2] The motion's caption states that it is "Filed Under Seal," but no motion to seal was filed, and the motion was filed on the public docket. Undersigned counsel assume it was not actually intended to be sealed.

Beyond these "unusual" procedural issues, the United States's motion requests an order which—for a law enforcement officer accused of misconduct in public—is truly unprecedented in its scope and restrictiveness. The proposed order is in no way limited to information that the United States, as a third party, has produced or might produce.[3] *See generally* Prop. Prot. Order. (D.E. 11-2). Instead, the proposed order designates all "identifying information" about the defendant as protected and forbids both any "party" and any "third party" from disclosing it. *See id.* ¶¶1-3, 9. At the conclusion of the case, Plaintiff and his counsel would be required to comb through various electronic systems to attempt to "destroy" all identifying information received, including apparently information independently gathered by Plaintiff's investigation and/or included in counsel's attorney work-product materials. *See id.* ¶10.

It thus appears that the proposed secrecy would last forever, regardless of whether any safety threat exists or continues. *See id.* In addition, the Court's staff would be required to remove the Plaintiff's motion for early discovery from the public docket, *after* it has been available to the general public without any motion to seal for well over a month. *See id.* ¶8.

In summary, the United States's motion is essentially asking for an order allowing the defendant law enforcement agent to proceed by pseudonym and remain permanently anonymous in a case challenging his performance of civil immigration enforcement duties in public. That approach is profoundly contrary to the public interest, and, as far as Plaintiff's counsel can

---

[3] Pursuant to the Court's order allowing early discovery, Plaintiff's counsel served the U.S. Department of Homeland Security, the U.S. Marshals, and an individual with the Court-approved Rule 45 subpoenas. The parties ultimately negotiated a production deadline of today, March 3rd, along with certain narrowing of the DHS subpoena and withdrawal of the other two subpoenas. DHS made its production of identifying information today, with no protective order in place. Undersigned counsel will voluntarily treat the identifying information produced as confidential until after the Court decides the United States's pending motion for protective order.

determine, has never before been permitted by any federal court in such circumstances.  For the

reasons described below, the United States's motion should therefore be denied.

**ARGUMENT**

I.    **As a non-party, the United States may not move for a protective order on behalf of the Defendant, nor has it chosen to pursue any of the permissible paths to represent its own interests.**

The United States acknowledges that it is a "non-party to this litigation." *See* Mot. for Prot.

Order (D.E. 11-1) at 2 n.1.  As the recipient of Rule 45 third-party subpoenas, the government

could have requested to produce materials under specified conditions.  *See* Fed. R. Civ. P.

45(d)(3)(C); *see also* Fed. R. Civ. P. 26(c)(1) (allowing persons "from whom discovery is sought"

to seek protective orders).  Here, however, the government did not move for an order relating to

its production under the subpoenas.  Instead, the United States seeks to regulate the conduct of the

parties, non-parties, their counsel, and the Court throughout the entire conduct of the litigation and

forever thereafter, including as to information collected from sources other than the government.

The United States has not articulated any basis to do this as a non-party, nor does it offer any

developed argument on the point.  *See* Mot. for Prot. Order (D.E. 11-1) at 2 n.1.

There are, of course, well-developed mechanisms for non-parties to request participation

in litigation, if they can meet the standards established by the rules.  For example, a non-party can

move to intervene as of right under Rule 24(a)(2) if it can show "(1) the timeliness of its motion;

(2) a concrete interest in the pending action; (3) a realistic threat that resolution of the pending

action will hinder its ability to effectuate that interest; and (4) the absence of adequate

representation by any existing party." *See SEC v. LBRY, Inc.*, 26 F.4th 96, 99 (1st Cir. 2022)

(internal quotation marks and brackets omitted).  A "federal . . . governmental officer or agency"

can also move to permissively intervene under Rule 24(b)(2) if they can show that "a party's claim

or defense is based on: (A) a statute or executive order administered by the officer or agency; or

5

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." *See* Fed. R. Civ. P. 24(b)(2)(A)-(B). Or, alternatively, the government can request that the Court take notice of its position by filing a statement of interest, *see* 28 U.S.C. § 517, or by requesting leave to file a brief *amicus curiae*. *See, e.g.*, *Pesce v. Coppinger*, 355 F. Supp. 3d 35, 39 n.1 (D. Mass. 2018) (Casper, J.) (noting that district court allowed non-parties to file briefs as *amicus curiae* in support of a party's motion and considered their arguments).

Here, the United States has not pursued any of these options to participate in this action. The motion can be denied on this basis alone.

## II.    The extent and context of the proposed protective order are extraordinary, unprecedented, and contrary to the public interest.

The motion should also be denied because the extraordinary relief it seeks is unprecedented and contrary to the public interest. "Police wield coercive power on behalf of the state—detaining, searching, and using force under color of law—and constitutional legitimacy depends on those powers being exercised openly and traceably." *Urquilla-Ramos v. Trump*, -- F. Supp. 3d --, No. 26-00066, 2026 WL 475069, at *7 ( S.D. W. Va. Feb. 19, 2026) (internal quotation marks omitted). Consequently, "[w]here a case involves allegations of police misconduct, the public has a vested interest in assessing the truthfulness of allegations of official misconduct . . . ." *See Bryant v. Cty. of Los Angeles*, No. 20-9582, 2021 WL 936174, at *1 (C.D. Cal. Mar. 8, 2021) (internal quotation marks omitted); *Penny v. City of Los Angeles*, No. 20-7211, 2022 WL 22855503, at *2 (C.D. Cal. Mar. 21, 2022) ("[T]he public has a strong interest in transparency when there are allegations of police misconduct. . . ."); *see also Glik v. Cunniffe*, 655 F.3d 78, 82-83 (1st Cir. 2011) (explaining transparency regarding law enforcement activities "not only aids in the uncovering of abuses, . . . but also may have a salutary effect on the functioning of government more generally").

6

It is therefore unsurprising that the government has not cited a single case where a court granted permanent anonymity to a law enforcement officer accused of breaking the law while performing his or her public duties in public.  Instead, the government relies largely on cases arising in specialized intelligence and undercover operations—which are obviously inapposite to a civil immigration stop in front of a crowd of people on a public street.  The government has "not identified a single case in which a police officer sued for civil rights violations has been allowed to proceed in such a manner."  *See Bryant*, 2021 WL 93614, at *1.  Nor does the government even argue the factors identified in *Doe v. MIT*, where the First Circuit established the controlling legal standard for motions to proceed by pseudonym.  *See* 46 F.4th 61, 67-73 (1st Cir. 2022).  The motion should be denied on these grounds alone.

To be sure, in the last year, ICE and other immigration agencies have adopted a preference for masking their agents during public operations to conceal their identities.[4]  These practices during civil immigration arrests raise grave constitutional concerns.  *See, e.g.*, *Urquilla-Ramos*, 2026 WL 475069, at *8 (explaining "the type of anonymized and indiscernible policing presented here is precisely what the Fourth Amendment was written to prevent").  Masking agents also creates significant practical obstacles to preventing and correcting instances of misconduct.  *See id.* at 11 (explaining that "[i]ndividuals lack the information necessary to report misconduct for meaningful judicial review or internal investigation . . . . [and] [o]fficers are thereby emboldened to exercise their power in an arbitrary and oppressive manner").  These difficulties could increase

---

[4] *See, e.g.*, Lisa Mascaro, *Masks emerge as symbol of Trump's ICE crackdown and a flashpoint in Congress*, ASSOCIATED PRESS (Feb. 9, 2026), https://apnews.com/article/ice-masks-congress-homeland-security-shutdown-funding-3c5b2050286aab930d8c81eb9cb1e03e.

if law enforcement agents are allowed to remain anonymous and effectively "masked" during court proceedings like this one that challenge their unlawful acts.

Regardless, once an ICE agent has been sued in court for alleged misconduct in public, the judiciary has never endorsed continuing, permanent anonymity for the accused agent.  The United States relies on *Bissereth v. United States*, a Federal Tort Claims Act case where the United States filed the motion after it was already a party to the litigation.  *See* No. 21-11068, 2023 WL 4373888, at *1 (D. Mass. Jul. 6, 2023).[5]  The actual order in that case, however, does not support the government here.  *See* Aug. 18, 2022 Electronic Order (D.E. 30), *Bissereth v. United States*, C.A. No. 21-11068 (D. Mass.).  For one thing, the United States's motion for the defendant officers to proceed by pseudonym in *Bissereth* was assented-to by the plaintiffs, and the issues were therefore uncontested.  *See id.*  For another, the court was acting in part based on a concern that some of the officers were not properly being joined in the case.  *See id.* (noting the "possibility that some of the Doe Defendants may not remain in this case").

More fundamentally, the court in *Bissereth* made clear that "[t]he mere fact that a law enforcement officer, including an ICE agent, has been sued is not alone sufficient to warrant allowing a defendant to proceed anonymously, and the Court questions whether the generalized threats offered by the Government warrant a conclusion otherwise."  *See id.*  The court explained that, "[a]t some point . . . the public's interest in open litigation and the identities of the Defendants will outweigh" countervailing considerations.  *See id.*  The court therefore allowed anonymity only "for now" and placed the parties "on notice that the Court may and likely will, once the Defendants have been identified and it has been determined who is properly in the case, vacate or modify this

---

[5] The substantive holding in *Bissereth* rejecting the Bivens claim has essentially been abrogated by the First Circuit's subsequent decision in *Arias v. Herzon*, 150 F.4th 27, 32-33 (1st Cir. 2025).

order to allow for disclosure of the identities covered by this order to ensure the proceeding is transparent and otherwise consistent with the public interest." *See id.* Nothing in that order suggests the court would have allowed an opposed motion to permanently restrain all parties from naming the sole defendant agent once his identity was confirmed.

In all the other cases cited by the Government, the courts granted anonymity to federal agents working on sensitive matters who were not defendants in the case. *In re Guantanamo Bay Detainee Litigation* arose from habeas litigation, and the government sought to protect the names of people who handle classified information and/or who work for various intelligence agencies in connection with counter-terrorism efforts. *See* 787 F. Supp. 2d 5, 8, 16 (D.D.C. 2011). In *Doe No. 1 v. United States*, the plaintiffs seeking anonymity were FBI English Monitor Analysts ("EMAs") engaged in counterintelligence and counterterrorism operations. *See* 146 Fed. Cl. 690 (2020). In *Commonwealth of Puerto Rico v. United States*, the court allowed an assertion of privilege where Puerto Rico had attempted to subpoena the names of FBI agents working on "covert operations." *See* 490 F.3d 50, 68-69 (1st Cir. 2007). In *Lesar v. DOJ*, the court allowed the FBI to redact the names of FBI personnel under a statutory FOIA exemption when it made public several classified reports on the FBI's investigation of Dr. Martin Luther King and his assassination. *See* 636 F.2d 472, 475-78, 486 (D.C. Cir. 1980). None of these cases suggest that federal agents enforcing civil immigration law in public locations are entitled to anonymity when sued for alleged misconduct. The United States's motion should be denied for this reason, as well.

III. **The concerns raised by the United States do not outweigh the public interest in open and transparent litigation regarding alleged misconduct by law enforcement personnel.**

Against the strong public interest in open and transparent adjudication of claims of misconduct against law enforcement officers, the United States asks the Court to weigh three categories of alleged threats: (a) statements made by a bystander at the scene of Mr. Zapata

9

Rivera's arrest almost four months ago; (b) a non-threatening poster that asks for identifying information about Agent Doe; and (c) generalized allegations of threats against other ICE agents, with no nexus to this agent or case. *See* Prot. Order Mot. (D.E. 11-1) at 4-6. Undersigned counsel are, of course, highly sensitive to safety concerns that may be raised by any party or non-party. However, given the specific facts presented, the issues raised by the United States do not outweigh the countervailing interests where the defendant is a public law enforcement employee sued based on his performance of public duties in a public place. Indeed, the United States's implicit contention that law enforcement *should expect* anonymity in the performance of their public duties, and that media attention and identification are somehow anomalous, would turn the law on its head. *See, e.g.*, *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 833, 838 (1st Cir. 2020) (recognizing First Amendment right to the "recording of on-duty police officers' treatment of civilians in public spaces while carrying out their official duties, even when conducted without the officer's knowledge," including "the loss of some measure of [the officers'] privacy when doing their work in public spaces"); *Glik*, 655 F.3d at 82 (explaining First Amendment right to openly record "government officials engaged in their duties in a public place" serves "a cardinal First Amendment interest in protecting and promoting the free discussion of government affairs"); *Urquilla-Ramos*, 2026 WL 475069, at *8 ("When the public cannot readily determine who is acting under government authority, it is difficult to regard the actions as legitimate exercises of law enforcement power.").

First, as to the alleged statements made by the bystander on November 6, 2025, Agent Doe and ICE have been aware of them since the moment they were allegedly made, and indeed took steps to document them in the contemporaneous arrest report for Mr. Zapata Rivera's wife. Prot. Order Mot. (D.E. 11-1) at 3-4. In body camera footage of the incident recorded by the Fitchburg

Police Department, Agent Doe informs the local police, "I want her name and DOB, because we may take out an affidavit." Agent Doe also states, "I have her photo. I can follow up with it."[6] ICE and other federal law enforcement have thus had almost four months to investigate these alleged statements and take whatever action they deem appropriate—which appears to be none. And there is no evidence that the bystander or anyone else has taken any threatening actions or made any threatening statements in the meantime, even while the United States concedes the information in Plaintiff's motion for discovery, which has been on the public docket for over month, "is sufficient to identify Defendant Doe." *See* Prot. Order Mot. (D.E. 11-1) at 2 n.2. There appears to be no current threat to Agent Doe or anyone else.

Second, other than those alleged statements in November, the United States offers only generalized information to support its contention that Agent Doe would face danger if his identity were revealed. The poster contains no threat. *See* Prot. Order Mot. (D.E. 11-1) at 6. And the statistical information relied upon by the government is both irrelevant and untrustworthy. For example, the Government cites a purported statistic that ICE officers face an 8000% increase in death threats against them. *Id.* at 4. However, the cited DHS source containing the statistic is a press release that provides no backup data to support the contention.[7] *Id.* Colorado Public Radio attempted to verify an October 2025 DHS claim that assaults on ICE officers had climbed by 1000%, but DHS did not answer their request for backup data, nor could the journalists

---

[6] This video was produced to undersigned counsel by the Fitchburg police as a public record and can be provided to the Court upon request.

[7] The press release appears to have been released by DHS public affairs staff, who notably lied to the public about the circumstances of Mr. Zapata Rivera's arrest. *See* Compl. (D.E. 1) ¶71.

independently confirm the increase by examining federal court records.[8]  The United States also cites two isolated prosecutions in Minnesota and California, *see* Prot. Order Mot. (D.E. 11-1) at 5-6, but if anything, those incidents highlight the powers of the federal government to act upon any allegedly concerning behavior.  Nothing here overcomes the countervailing transparency interests where the defendant is a public law enforcement official sued for misconduct in the performance of public duties in a public place.

IV.    **If the Court does issue a protective order, it must be carefully limited in time and scope.**

Lastly, although the United States's motion should be denied in its entirety, if the Court does choose to issue a protective order, it must be narrowly tailored in time and scope given the specific factors in this case.  The order should expire by its own terms after no more than one month, subject to a motion by Agent Doe himself to renew it, supported by affidavits and other admissible evidence specifically describing any perceived threats.  Any such submissions should be required to include specific information about whether these threats have been reported to law enforcement and what actions have been taken to investigate and/or mitigate them.  Further, in no circumstances should the Court require Plaintiff to undertake the highly burdensome (and potentially impossible) task of destroying their own files upon the conclusion of the litigation—if the Court were ever to rule that permanent secrecy is necessary (which, to be clear, it should not do), any restrictions on dissemination could simply continue in effect upon conclusion of the litigation.

---

[8] Ben Markus & Allison Sherry, *Claims of huge rise in assaults against ICE drive responses, but aren't seen in available data*, Colorado Public Radio, Oct. 2, 2025, https://www.cpr.org/2025/10/02/ice-agent-assault-claims-data-lacking/.

## CONCLUSION

For all the foregoing reasons, the Court should deny the United States's motion.

Respectfully submitted,

*/s/ Daniel L. McFadden*
Jessie J. Rossman (BBO #670685)
Daniel L. McFadden (BBO #676612)
Ingrid Sydenstricker (BBO #718298)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
dmcfadden@aclum.org
isydenstricker@aclum.org

Ingrid S. Martin (BBO #653632)
Joseph M. Cacace (BBO #672298)
Todd & Weld, LLP
One Federal Street
Boston, Massachusetts 02110
Tel.: (617) 720-2626
imartin@toddweld.com
jcacace@toddweld.com

*Counsel for Plaintiff*

Dated: March 3, 2026

13

**Certificate of Service**

I, Daniel L. McFadden, hereby certify that the U.S. Attorney's Office will be electronically served with this document through the court's CM/ECF system.


Dated: March 3, 2026                                  */s/ Daniel L. McFadden*
                                                      Daniel L. McFadden