**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARLOS SEBASTIAN ZAPATA RIVERA, <br><br>       Plaintiff, <br><br> v. <br><br> UNKNOWN FEDERAL AGENT JOHN DOE, <br><br>       Defendant. | C.A. No. 25-13850-MRG |

**MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION
FOR A *NUNC PRO TUNC* PROTECTIVE ORDER**

The Court previously rejected the government's motion to keep Agent John Doe perpetually anonymous. The United States's new motion functionally seeks the same relief. The government offers no new arguments on the merits. It does not cite any new legal authorities for its extraordinary request. Indeed, the new motion cites no legal authorities at all, besides a bare citation to Rule 26. There is no new evidence of threats pertaining to Agent Doe, except for one entirely unrelated incident that occurred almost two months before he first encountered Mr. Zapata Rivera last November. There is still no declaration from Agent Doe himself. Functionally, the government's motion appears to request a "do over" of its prior motion, which is not typically permitted. And nothing is stopping Agent Doe from filing his own motion for any relief he might desire—he simply hasn't.

There are also multiple other reasons to deny the motion: The motion is not timely because the government waited over a month to file it after producing these materials without restriction. The evidence does not justify the extraordinary step of granting permanent anonymity to a civilian public employee sued for breaking the law while performing public duties in a public place. The

1

proposed order requested by the government remains vastly overbroad and—particularly in light of the government's prior public statement about Agent Doe's identity—would place Plaintiff's counsel in a legal and ethical minefield.  The government's motion should be denied.[1]

## BACKGROUND

Agent Doe is a civilian public employee who, at all relevant times, was performing civil immigration enforcement duties in a public setting.  *See* Compl. (D.E. 1) ¶46 & Fig. 4; Mot. for Early Discovery (D.E. 8) at 4-5.[2]  Last November, Agent Doe strangled Mr. Zapata Rivera unconscious while arresting him during a vehicle stop on a public street in Fitchburg, Massachusetts.  *See* Compl. (D.E. 1) ¶¶29-65.  Because Agent Doe wore a mask and took other steps to hide his identity during the encounter, the initial Complaint named him by the pseudonym John Doe.  *See* Mot. for Early Discovery (D.E. 8) at 3-4.

Plaintiff promptly filed a motion to take early discovery to identify Agent Doe so that the complaint could be amended to name him and be served.  *See id.*  The Court allowed that motion on January 30.  *See* Jan. 30, 2026 Elec. Order (D.E. 9).  Plaintiff served the Court-authorized subpoenas, which ultimately resulted in DHS producing several categories of records on March 3.  One of those categories was documents sufficient to identify Agent Doe.  *See* Mot. for Early Disc.

---

[1] To the extent the government merely seeks to prevent disclosure of Agent Doe's home address and city of residence, *see* Proposed Order (D.E. 18-2) ¶1, that information appears unlikely to be material in the case (other than for service of process purposes).  Plaintiff can redact that information from any public filings should it incidentally appear in otherwise relevant documents.  Additionally, to the extent Agent Doe's personal email address, personal phone number(s), or personal social media account identifiers appear in relevant documents, those items can also be redacted from any filings on the public docket.  His social security number, financial account information, birth date, and the names of any minor children would be redacted in accordance with Fed. R. Civ. P. 5.2, should that information appear in any documents being filed.

[2] Agent Doe is part of ICE ERO, which performs civil immigration enforcement duties in the interior of the United States.  *See, e.g.*, *Georgia Latino Alliance for Human Rights v. Deal*, 793 F. Supp. 2d 1317, 1344 (N.D. Ga. 2011), *aff'd in part and rev'd in part*, 691 F.3d 1250 (11th Cir. 2012).

(D.E. 8-1) (DHS subpoena category 6).  The sole document produced in that category is a memorandum concerning a specific, named ICE agent.  Plaintiff is consequently prepared to amend the complaint to name that agent as the defendant, and to serve the complaint on that agent. Plaintiff's current service deadline is April 14.  *See* Mar. 12, 2026 Elec. Order (D.E. 15).

In the meantime, the United States had filed a motion in mid-February to allow Agent Doe to proceed by pseudonym and prevent the release of his name forever.  *See generally* Mot. for Prot. Order (D.E. 11).  Plaintiff opposed that motion on March 3, *see* Opp. (D.E. 12), and the Court denied it on March 5.  *See* Mar. 5, 2025 Elec. Order (D.E. 13).  The Court's Order denied the motion both procedurally and on the merits.  First, the Court ruled that the motion "is not properly before this Court" because the United States "is not a party to this case, has not moved to intervene, and has not sought to join the case by any other mechanism."  *Id.*  Second, the Court ruled that the defendant "has not met his burden of rebutting the strong presumption against proceeding by pseudonym."  *Id.*  The Court also explained that the motion "is problematic due to the permanency of the request for anonymity."  *Id.*  The Court concluded that "[s]hould Agent Doe seek to proceed by pseudonym, he may file his own, properly supported motion, or the United States may seek entrance into this case through appropriate procedural means."  *Id.*

Agent Doe has not taken the Court up on its offer.  Nearly four months into this lawsuit, DOJ represents that it has not decided whether to represent Agent Doe, even though he has requested representation.  *See* Mot. for Prot. Order (D.E. 18) at 3.  Regardless, there is nothing stopping Agent Doe from engaging private counsel like any other litigant and filing whatever motions he deems appropriate.  He has not.

The United States similarly took no action for almost a month after the Court's March 5 ruling.  Then on April 1, the government filed the instant motion, which asks for a protective order

*nunc pro tunc* over the identifying document produced by the government without restrictions on March 3.[3]  Although styled slightly differently than the government's last motion, this new motion is clearly intended to achieve the same result: permanent anonymity for Agent Doe.  *See generally* Mot. for Prot. Order (D.E. 18-2) (proposed protective order).

This belated new motion contains no new argument and cites no legal authorities besides Rule 26 itself.  It also contains no new relevant evidence specific to Agent Doe.  The 15-page accompanying declaration contains three paragraphs specifically pertaining to purported threats or "doxing" against Agent Doe.  One describes an entirely unrelated incident that allegedly happened in September, almost two months before Agent Doe encountered Mr. Zapata Rivera.  *See* Piepiora Decl. ¶27.  The person involved in that alleged prior incident appears to be known to ICE, and so presumably the government has already taken whatever action it deems appropriate in response. *See id.*  The other two paragraphs recount the same alleged conduct cited in the government's first motion: (a) alleged statements made by a bystander during the incident in early November, *compare* Mot. for Prot. Order (D.E. 11-1) at 3, *with* Piepiora Decl. ¶28; and (b) a poster reportedly found online that contains no threats, *compare* Mot. for Prot. Order (D.E. 11-1) at 6, *with* Piepiora Decl. ¶29.[4]  The government appears to have no new evidence about these alleged acts.  There is no suggestion that they were repeated, or that the persons involved have had any contact with

---

[3] The government informed Plaintiff's counsel of its intent to file a motion along these lines on Friday, March 6, the day after the Court denied the first anonymity motion.  Plaintiff's counsel communicated their opposition the following Monday, March 9.

[4] The government makes much of the fact that the poster gives a Proton Mail email address, which the government alleges is "associated with the 'dark web.'"  *See* Piepiora Decl. ¶29.  Proton Mail is a widely used commercial email service that has been in operation for more than a decade. WIRED Magazine recently recommended it to its readers as a more user-friendly alternative to GMail.  *See* Jacob Roach, "*Review: Proton Mail*," WIRED Magazine (Oct. 16, 2025), https://www.wired.com/review/proton-mail/.

Agent Doe in the last month.  Nor is there any suggestion that the government has deemed it necessary to undertake, or has taken, any action in response.[5]

The new motion appends a proposed protective order, which contains most of the same flaws as the original proposal.  *See* Prop. Order (D.E. 18-2).  For example, the secrecy over the identifying information is again proposed to last for an indefinite, and apparently permanent, period of time.  *See id.*  And, at the conclusion of the case, the proposed order would again require Plaintiff's counsel to undertake a highly burdensome (and likely impossible) task of erasing all identification information from their various electronic systems, apparently including the destruction of their own attorney work product.  *See id.*

In summary, the United States's motion is essentially asking for the same thing as its prior motion, using the same information pertinent to Agent Doe and the underlying incident.  The Court rejected this request once and should do so again.

---

[5] The remaining paragraphs recite alleged behavior involving ICE agents who are not Agent Doe. *See* Piepiora Decl. ¶¶31-44.  Many of them are not specified to have occurred in Massachusetts, and it appears these paragraphs may be a survey of events nationwide.  *See id.* ¶¶31, 33-34, 37, 39, 44 (no location specified).  Indeed, the declaration reports a "nationwide" total of 85 alleged "doxxing" incidents and 46 alleged threats against ICE personnel, with "37% of impacted personnel" being ERO officers like Agent Doe.  *See id.* ¶¶18-19.  Plaintiff's counsel in no way intend to minimize the impact these alleged actions might have on government personnel, but these numbers should be placed in context: the 131 alleged events evidently occurred within a workforce of over 20,000 employees and were spread over a 14-month period.  *See id.*; "Career Frequently Asked Questions," ICE, https://www.ice.gov/careers/faqs.  That works out to a monthly average of roughly one alleged incident per 2,100 employees.  The government has a variety of capabilities to respond to any perceived threats and to protect personnel (including criminal prosecution if factually and legally justified), and the declaration also states that ICE has recently funded additional protections for its workforce.  *See* Piepiora Decl. ¶45.

## ARGUMENT

**I.    The motion should be denied because, functionally, it seeks no new relief, presents no new pertinent evidence, and does not meet the standards for reconsideration.**

As an initial matter, it is clear the United States's motion—which seeks essentially the same relief, based on the same pertinent evidence, without any new legal argument—is functionally asking for reconsideration of the Court's prior order under a slightly different procedural mechanism.  This is not typically permitted.  District Courts of course have inherent authority to reconsider their interlocutory orders.  *See Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008).  However, motions for reconsideration of non-final orders are typically granted in three defined circumstances: (1) "newly discovered evidence;" (2) "intervening change in applicable law;" and (3) "manifest error of law" or clear injustice.  *See Lama-Wolobah v. Paqui LLC*, No. 24-12016-MRG, 2026 WL 905142, at *1 (D. Mass. Mar. 31, 2026) (collecting cases).  It is not "a vehicle for a party to undo its own procedural failures."  *See United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009).  Here, where the Court previously denied the government's motion both procedurally and on the merits, and where the new motion fits none of three categories for reconsideration, the motion should be denied.

**II.    The motion should be denied because it is untimely.**

The motion should also be denied because it is not timely.  The government's motion was filed on April 1, and apparently seeks to retroactively restrict the use of a document that the government already produced without restriction on March 3.  The government offers no explanation for waiting nearly a month (until less than two weeks before Plaintiff's service deadline) to file this motion.  Courts generally construe Rule 26 to implicitly require that a protective order motion be timely.  *See Lexington Ins. Co. v. Swanson*, No. 05-1614, 2007 WL 1287938, at *2 (W.D. Wash. May 1, 2007) (citing 8 Charles A. Wright et al., Federal Practice &

6

Procedure § 2035 (2d ed. 1994) & 6 James Wm. Moore, Moore's Federal Practice, § 26.102[2] (2007)). This means that generally the motion must be filed "'prior to the date set for producing the discovery.'" *See id.* (quoting Moore's Federal Practice § 26.102[2] and collecting cases). Here, the government had a protective order motion pending on March 3 when it produced the document, but that motion was denied two days later on March 5. *See* Mar. 5, 2025 Elec. Order (D.E. 13). The government could have promptly filed the instant motion within a few days after the denial, *see* n.3, *supra*, but instead took no further action for nearly a month, during which time the document was unrestricted.[6] Labeling its belated motion "*nunc pro tunc*" is not sufficient to cure the motion's untimely presentation. *See Meltzer/Austin Restaurant Corp. v. Benihana Nat. Corp.*, No 11-542, 2013 WL 2607589, at *9 n.11 (W.D. Tex. Jun. 10, 2013) (finding "no legal basis" for a "*nunc pro tunc*" motion to cure a failure to timely file motion for protective order). This, too, is a basis to deny the government's motion.

III.    **The motion should be denied because the government has made no showing sufficient to justify secrecy or overcome the public interest in transparency.**

On the merits, the motion still fails to justify the extraordinary step of granting a public employee permanent anonymity, where it is alleged he broke the law while performing public duties in a public place.

There is a strong public interest in transparency in cases alleging misconduct by law enforcement officers. "Police wield coercive power on behalf of the state—detaining, searching, and using force under color of law—and constitutional legitimacy depends on those powers being exercised openly and traceably." *Urquilla-Ramos v. Trump*, -- F. Supp. 3d --, No. 26-00066, 2026 WL 475069, at *7 (S.D. W. Va. Feb. 19, 2026) (internal quotation marks omitted). Consequently,

---

[6] Having been informed that the government intended to file this motion in early March, Plaintiff's counsel has voluntarily refrained from distributing the document at issue or otherwise confirming Agent Doe's identity to third parties.

"[w]here a case involves allegations of police misconduct, the public has a vested interest in assessing the truthfulness of allegations of official misconduct . . . ." *See Bryant v. Cty. of Los Angeles*, No. 20-9582, 2021 WL 936174, at *1 (C.D. Cal. Mar. 8, 2021) (internal quotation marks omitted); *Penny v. City of Los Angeles*, No. 20-7211, 2022 WL 22855503, at *2 (C.D. Cal. Mar. 21, 2022) ("[T]he public has a strong interest in transparency when there are allegations of police misconduct. . . ."); *see also Glik v. Cunniffe*, 655 F.3d 78, 82-83 (1st Cir. 2011) (explaining transparency regarding law enforcement activities "not only aids in the uncovering of abuses, . . . but also may have a salutary effect on the functioning of government more generally").  Law enforcement officers performing public duties in public places cannot generally expect to remain anonymous.  *See, e.g.*, *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 833, 838 (1st Cir. 2020) (recognizing First Amendment right to the "recording of on-duty police officers' treatment of civilians in public spaces while carrying out their official duties, even when conducted without the officer's knowledge," including "the loss of some measure of [the officers'] privacy when doing their work in public spaces"); *Glik*, 655 F.3d at 82 (explaining First Amendment right to openly record "government officials engaged in their duties in a public place" serves "a cardinal First Amendment interest in protecting and promoting the free discussion of government affairs"); *Urquilla-Ramos*, 2026 WL 475069, at *8 ("When the public cannot readily determine who is acting under government authority, it is difficult to regard the actions as legitimate exercises of law enforcement power.").

Against the strong public interest in open and transparent adjudication of claims of misconduct against law enforcement officers, the United States brings nothing new to the table. Although the new motion functionally seeks to allow Agent Doe to proceed by pseudonym, the government does not argue that it has met, or could meet, the controlling factors identified by the

First Circuit in *Doe v. MIT* regarding the use of pseudonyms in litigation. *See* 46 F.4th 61, 67-73 (1st Cir. 2022). The government does not cite any cases granting the relief it now seeks—it cites no cases at all. And factually, the government's 14-page declaration from (A)AFOD Piepiora actually contains only three paragraphs about purported threats or "doxing" against Agent Doe: two are the same as cited in the prior motion, and the third is an entirely unrelated event that allegedly occurred in September 2025 (long before Agent Doe encountered Mr. Zapata Rivera the following November). *See* Piepiora Decl. (D.E. 16-4) ¶¶27-29. These events still do not support permanent anonymity—indeed, with the passage of time these allegations have only become more stale, and the government has only had more time to take whatever responsive action it deems appropriate (which according to the declaration, appears to be none). The government's motion should be denied for this reason, as well.

IV.     **The motion should be denied because the proposed protective order is overbroad and would be prejudicial to Plaintiff.**

Lastly, even if the Court were to order some degree of anonymity (which it should not), the relief requested by the government remains vastly overbroad. As with the last motion, the government appears to request a blanket prohibition on disclosing the identifying information forever. It requires Plaintiff and his counsel to take extraordinary steps at the conclusion of the case, such as purging electronic systems and destroying attorney work-product. It provides no obvious pathway for Plaintiff to amend the complaint and complete service, which Plaintiff must do imminently.

Additionally, here, the function of any protective order would be severely complicated by the fact that the government has already made statements about Agent Doe's identity on the public docket. Plaintiff's initial discovery motion (filed before the government had sought anonymity) identified a person who is "possibly" Agent Doe. *See* Mot. for Early Disc. (D.E. 8) at 5. In its

9

first anonymity motion, the United States stated that this information "is sufficient to identify Defendant Doe." *See* Mot. for Prot. Order (D.E. 11-1) at 2 n.2. Thus, anyone monitoring the public docket—including potential witnesses and the media—is likely to associate that person's name with Agent Doe's identity. Yet, if the protective order enters, undersigned counsel will have to walk on eggshells when talking to witnesses to avoid disclosing or in any way affirming the identifying information which the witness may already know and may raise on their own. This will complicate counsel's ability to investigate and prepare this case, resulting in prejudice to their representation of the Plaintiff. *See Doe*, 46 F.4th at 72 (explaining that even a properly supported motion to proceed by pseudonym may be denied based on "the prospect of serious prejudice to other parties"); *Jakuttis v. Town of Dracut*, 656 F. Supp. 3d 302, 351 (D. Mass. 2023) (denying anonymity to police officers accused of misconduct where parties submissions "already revealed the identities of these officers to the public"), *aff'd in part, remanded in part sub nom. Jakuttis v. Town of Dracut*, 95 F.4th 22 (1st Cir. 2024).

If the Court does choose to issue a protective order, it must be narrowly tailored. Any such order should expire by its own terms after no more than one month, subject to Agent Doe himself filing a motion to renew it, supported by affidavits and other admissible evidence specifically describing any current perceived threats and specific information about what actions have been taken to investigate and/or mitigate them. The order would have to include specific guidance to Plaintiff about how to amend and serve the complaint, including guidance on (a) how to proceed if Plaintiff relies on the government's discovery to identify the Defendant; and (b) how to proceed without threat of sanction if Plaintiff has an adequate independent basis to identify the Defendant, separate from the government's discovery. The order would also have to provide Plaintiff's counsel with some kind of safe harbor procedure to receive information from witnesses who

themselves have identified Agent Doe (either based on public filings or other means), without exposing counsel to sanctions under the order.  And under no circumstances should the Court require Plaintiff to undertake the highly burdensome (and potentially impossible) task of destroying their own files upon the conclusion of the litigation—if the Court were ever to rule that permanent secrecy is necessary (which, to be clear, it should not do), any restrictions on dissemination could simply continue in effect upon conclusion of the litigation.

## CONCLUSION

For all the foregoing reasons, the Court should deny the United States's motion.

Respectfully submitted,

*/s/ Daniel L. McFadden*
Jessie J. Rossman (BBO #670685)
Daniel L. McFadden (BBO #676612)
Ingrid Sydenstricker (BBO #718298)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF
MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
dmcfadden@aclum.org
isydenstricker@aclum.org

Ingrid S. Martin (BBO #653632)
Joseph M. Cacace (BBO #672298)
Todd & Weld, LLP
One Federal Street
Boston, Massachusetts 02110
Tel.: (617) 720-2626
imartin@toddweld.com
jcacace@toddweld.com

*Counsel for Plaintiff*

Dated: April 6, 2026

**<u>Certificate of Service</u>**

I, Daniel L. McFadden, hereby certify that the U.S. Attorney's Office will be electronically served with this document through the court's CM/ECF system.

Dated: April 6, 2026                                    */s/ Daniel L. McFadden*
                                                        Daniel L. McFadden