**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARLOS SEBASTIAN ZAPATA RIVERA, ) | |
| ) | |
| Plaintiff, ) | Leave to file granted on July 8, 2026 |
| ) | |
| v. ) | Civil Action No. 4:25-cv-13850 |
| ) | |
| DAVID JACKSON, ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF DEFENDANT**
**DAVID JACKSON'S MOTION TO DISMISS**

Date: July 10, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN GUYNN
Deputy Assistant Attorney General
Torts Branch

SARAH E. WHITMAN
Assistant Director, Torts Branch

By:    */s/ Patrick B. Fenior*
PATRICK B. FENIOR
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 253-8796
Fax: (202) 616-4314
E-mail: Patrick.B.Fenior@usdoj.gov
*Counsel for Defendant David Jackson*

## TABLE OF CONTENTS

I.     Plaintiff's *Bivens* Analysis is Antiquated. ..........................................................................1

II.    Plaintiff's Qualified Immunity Analysis is Flawed. .........................................................6

From start to finish, Plaintiff's opposition represents a misapplication of modern Supreme Court precedent. Plaintiff's *Bivens* analysis is antiquated and reads as if the year were 2006 rather than present day. Plaintiff invites this Court to follow him down a path reliant on abandoned approaches in favor of Plaintiff's preferred outcome—that the Court stand alone, declare *Bivens* a robust and viable remedy in the immigration context, and arrogate legislative power to authorize a flood of new litigation Congress never sanctioned. In the past decade, the Supreme Court has repeatedly warned courts against extending a damages remedy to new contexts in which special factors weigh against judicially created relief, and this Court should decline to do so here. On qualified immunity, Plaintiff commits errors that the Supreme Court has long criticized by anchoring his reasoning to conclusory and discordant allegations that are disentitled to the presumption of truth on a motion to dismiss. He likewise relies on cases involving conduct markedly different from that alleged in the Complaint to argue Officer Jackson violated clearly established law. This is insufficient to meet his burden at the pleading stage to overcome qualified immunity.

## I.      Plaintiff's *Bivens* Analysis is Antiquated.

Plaintiff contends that recent Supreme Court precedent preserved the vitality of a *Bivens* remedy for "claims against federal officials acting in the interior of the United States," declaring the remedy "robust and viable." Opp'n at 9, 10. Plaintiff's perspective on *Bivens* is untethered from the reality of the Supreme Court's most recent opinions, see, e.g., *Goldey v. Fields*, 606 U.S. 942, 942-43 (2025) (per curiam) ("[I]n all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts.") (quoting *Egbert v. Boule*, 596 U.S. 482, 486 (2022)), and at odds with the recent observations of courts of appeals, see, e.g., *Spivey v. Breckon*, 173 F.4th 174, 178 (4th Cir. 2026) ("We have attempted to faithfully convey the Supreme Court's message about *Bivens* claims, repeatedly pointing out that they appear to be all

1

but dead, albeit not yet dead."); *Rowland v. Matevousian*, 121 F.4th 1237, 1241-42 (10th Cir. 2024) (similar).

The flaw in Plaintiff's position is not his insistence that *Bivens* has never been overruled and remains good law. That is, of course, the case unless the Supreme Court holds otherwise. The error lies in the fact that Plaintiff calls on this Court to ignore the uniform case law since *Egbert* and treat as business as usual his excessive force claim against ICE Officer David Jackson, who "conducts civil immigration arrests" and is sued as a result of his efforts to place Plaintiff's wife in immigration custody. *See* Am. Compl. ¶¶ 32, 47. The immigration context of Plaintiff's claim cannot be so cavalierly ignored.

The new context inquiry is a low bar and easy to satisfy. *See Ziglar v. Abbasi*, 582 U.S. 120, 147 (2017) ("[E]ven a modest extension is still an extension."). Plaintiff, however, flips the Supreme Court's admonition on its head by urging this Court to view the context of his claim as no different than *Bivens*. *See* Opp'n at 14 ("[T]he only defendant is a federal agent who was working in the field, and the alleged conduct (excessive force during an arrest) is on all fours with *Bivens*."). When a claim, such as the one Plaintiff asserts here, involves an immigration enforcement action, "[t]he newness of th[at] 'new context' should alone require dismissal." *Egbert*, 596 U.S. at 493 (quoting *Hernandez v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018)); *see also* Mem. at 6-8 (discussing the unanimity of courts of appeals treating claims involving immigration as a new context). Plaintiff downplays the significance of immigration enforcement in his new context analysis and calls the claim in *Arias v. Herzon*, 150 F.4th 27 (1st Cir. 2025), "virtually identical" to his own. Opp'n at 9. *Arias*, however, did not involve an immigration enforcement action and, instead, addressed an excessive force claim against "officers at the successor agency in *Bivens*," i.e., Drug Enforcement Administration officers investigating a

2

violation of federal drug laws. 150 F.4th at 40. The First Circuit noted that the district court

"recognized that Arias's excessive force claims named the same category of defendants as the

claims in *Bivens*" and the two cases shared many other similarities. *Id.* at 31. This case,

originating from an immigration enforcement action, does not. Plaintiff contends his claim

against Jackson "is the *Bivens* heartland," Opp'n at 1, but his *Bivens* claim represents a new

frontier that the Supreme Court has already signaled as closed to further exploration by lower

courts, see Mem. at 5-7.

Plaintiff insists that Jackson's employment as an ICE officer neither qualifies as a new

category of defendant, nor constitutes a meaningful difference in this case. In support, Plaintiff

relies on *Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015), to argue that the First Circuit has

a "history of applying *Bivens* to ICE agents." Opp'n at 12. *Morales*, however, was "decided

before the Supreme Court's admonition that the expansion of *Bivens* is strongly disfavored and

that cases arise in a new context" based on meaningful differences including whether they

involve a new category of defendant. *Darwish v. Pompeo*, No. 18-CV-01370-LJV-MJR, 2022

WL 831332, at *9 n.9 (W.D.N.Y. Mar. 21, 2022) (citing *Morales*, 793 F.3d 208). In *Morales*, the

First Circuit never analyzed whether ICE officers were a new category of defendant or whether

the claim against them arose in a new context. *See* 793 F.3d 208. Indeed, it never conducted a

special factors analysis at all. Plaintiff's reliance on *Pagan-Gonzalez v. Moreno*, 919 F.3d 582

(1st Cir. 2019), where the First Circuit was not called upon to decide the availability of a *Bivens*

remedy, is also unavailing. To hold out these pre-*Egbert* decisions as a roadmap for this Court to

follow is to lead this Court astray.

Instead, the Court should look to *Abbasi* and *Egbert* and the courts of appeals applying

*Egbert's* teachings since then. For example, in *Arias*, a post-*Egbert* case, the First Circuit

3

recognized that many excessive force cases involved a new category of defendant, which meant those putative *Bivens* claims arose in a new context. *See* 150 F.4th at 38-39 (citing *Cienciva v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752 (M.D. Pa. July 15, 2022) (officers from the U.S. Marshal Service) and *Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (officers from the Bureau of Land Management)). In Plaintiff's view, these excessive force claims against line-level federal officials acting in the interior of the United States would be no different than *Bivens* and those decisions were all wrongly decided. But it is Plaintiff who is wrong by trivializing the import of a court creating–without congressional authorization–a damages remedy against a new category of defendant. *See* Mem. at 5-6. *Compare also Arias*, 150 F.4th at 40 (citing *Boule v. Egbert*, 998 F.3d 370, 387 (9th Cir. 2021)) (observing Ninth Circuit had deemed the context of plaintiff's claim against Border Patrol officer new), *with Boule*, 998 F.3d at 387 (noting "modest extension" because defendant was "an agent of the border patrol"). The Court should reject Plaintiff's request that it act against the clear weight of authority post-*Egbert*. Instead, it should find that his claim against an ICE officer "squarely place[s] th[is] case into a new context." *Arias*, 150 F.4th at 38.

   Plaintiff next incorrectly argues that the relevant "legal mandate" in this case for new context purposes is "the Fourth Amendment" such that this case is no different than *Bivens*, which also involved a Fourth Amendment claim. Opp'n at 14. Plaintiff suggests that *Arias* supports his approach. *Id.* Plaintiff misunderstands the analysis *Arias* performed. In *Arias*, the First Circuit addressed the defendants' argument "that law enforcement officers who use force while acting pursuant to a warrant operate under a different legal mandate than do law enforcement officers who use such force while not acting pursuant to a warrant." 150 F.4th at 37. *Arias* does not support Plaintiff's proposition that the Fourth Amendment is the only relevant

legal mandate in excessive force cases; otherwise, the First Circuit's observation that officers from the Bureau of Land Management "operat[ed] under a different legal mandate" in an excessive force case makes little sense. 150 F.4th at 39 (citing *Mejia*, 61 F.4th at 668). Plaintiff conflates two distinct new context factors: (1) "the constitutional right at issue" and (2) the "legal mandate under which the officer was operating." *See Abbasi*, 582 U.S. at 176. It is the latter factor on which Officer Jackson relies. On the former factor, the Supreme Court has already said that a "claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020); *Egbert*, 596 U.S. at 495 ("[S]imilar allegations of excessive force . . . are not enough to support the judicial creation of a cause of action."). Moreover, Plaintiff's suggestion that discovery is needed on the legal mandate issue is a red herring. Plaintiff "does not point to any reason to believe that most federal agencies have the same or similar legal mandates, or more to the point, that [DHS] has the same mandate as agencies enforcing federal anti-narcotics law [as in *Bivens*]." *Firdos Sheikh v. U. S. Dep't of Homeland Sec.*, 106 F.4th 918, 925 (9th Cir. 2024) (alteration in original) (quoting *Mejia*, 61 F.4th at 668). Instead, Jackson's legal mandate, enforcing the immigration laws of the United States, is meaningfully different from enforcing federal drug laws and far removed from *Bivens*.

Finally, Plaintiff disputes that his claim implicates special factors not considered in *Bivens* and argues that any impact on the functioning of the other branches resulting from the adjudication of his claim would be "indistinguishable" from that already permitted under *Bivens*. Opp'n at 16. Plaintiff's argument is dependent on the Court accepting Plaintiff's contention that his claim has "no unique connection to immigration" and "is not a claim involving . . . national security." *Id.* at 12, 16. Belied by the allegations in the Complaint, Plaintiff's claim plainly arises

5

in the context of an immigration enforcement action supervised by Officer Jackson. Plaintiff's alleged arrest was the byproduct of Jackson effectuating his mandate to investigate immigration-related violations and enforce immigration law. The Supreme Court has recognized that immigration actions "in *this* country are perhaps *more* likely to impact the national security of the United States." *Egbert*, 596 U.S. at 496-97 (emphasis in the original); *see also Diaz Cruz v. United States*, No. 20-CV-891(EK)(SJB), 2023 WL 2574756, at *4 (E.D.N.Y. Mar. 20, 2023) ("Although *Hernandez* and *Egbert* involved incidents at the border, the Supreme Court's reasoning in the latter case suggests that immigration enforcement in general implicates national security."); *Hernandez v. Dep't of Homeland Sec.*, No. 8:25-cv-01928-SVW, 2026 WL 795311, at *3 (C.D. Cal. Mar. 9, 2026) (same). The immigration context of Plaintiff's claim and associated national security implications underscore why Jackson working for ICE and enforcing immigration laws are meaningful enough differences to make this context new.

Given that Plaintiff's claim presents a new context, this Court must assess whether any special factors militate against implying a damages remedy. Officer Jackson catalogued a host of special factors encumbering Plaintiff's claim, but Plaintiff fails to meaningfully refute any of them. Instead, he relies on policy reasons to support his desire for a damages remedy. *See* Opp'n at 16-17. But the Supreme Court has said such policy choices should be left to Congress. *See Egbert*, 596 U.S. at 491. The multitude of special factors present in this case, Mem. at 8-12, confirm that this Court should refuse to recognize a damages remedy.

## II.      Plaintiff's Qualified Immunity Analysis is Flawed.

On a motion to dismiss, a court should disregard unsupported conclusions, bald assertions, and subjective characterizations. *See Wescott v. Stanfill*, 171 F.4th 534, 540 (1st Cir. 2026). And yet, Plaintiff insists that this Court must accept his conclusory assertion that Officer Jackson used deadly force in this case. It does not. *See id.* He claims that his subjective

characterization that Officer Jackson used a chokehold or carotid restraint is insulated from any scrutiny at this stage of litigation. It is not. *See id.* Plaintiff relies on stills in both his Opposition and Complaint which do not support his conclusory allegations and characterizations. While Plaintiff may not appreciate the contradiction presented by these stills, Officer Jackson does— and so should the Court.

At a minimum, the Court should hew closely to the teachings of *Iqbal* and accept as true only the well-pleaded factual allegations in the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (rejecting as insufficient claims dependent on "labels and conclusions"). Language like "deadly force" and "strangulation" are not entitled to the presumption of truth and should not convince this Court to allow Plaintiff's claim to survive dismissal unless they are supported by *factual* allegations. On this, Plaintiff and Jackson agree. *See* Opp'n at 19 ("[W]hat is at issue here is not the name used to describe [Officer] Jackson's conduct, but the conduct itself."). That is why Officer Jackson focused on the alleged conduct—not conclusions and characterizations—in the Complaint and then relied on case law, as well as the Plaintiff's own medical literature, to show that Officer Jackson's alleged conduct could not support the Amended Complaint's counterfactual, subjective characterizations. *See* Mem. at 13-15. Plaintiff, on the other hand, does not attempt to explain why, in light of that case law and medical literature, the Court should accept his conclusory allegation that Jackson used a carotid restraint. Indeed, Plaintiff does not dispute or even address the case law and medical literature's description of a carotid restraint as requiring bilateral pressure.

Instead, Plaintiff insists that nakedly asserting that Jackson employed deadly force, in the form of a carotid restraint, is sufficient to withstand the Motion to Dismiss. He states that any argument that Jackson engaged in another technique or did not compress either or both of

7

Plaintiff's carotid arteries are factual disputes to be resolved later. Opp'n at 19. There, however, is no factual dispute that prevents the Court from concluding that Jackson is entitled to qualified immunity. At this juncture, Jackson only disputes the propriety of the Court accepting Plaintiff's labels and conclusions. To the extent there is a factual dispute, it is entirely one-sided. Plaintiff alleges Officer Jackson applied pressure forcefully with his thumbs on the sides of Plaintiff's neck and to Plaintiff's carotid arteries. Am. Compl. ¶ 51.[1] He then presents video stills that contradict that allegation. *Id.* at 14, fig. 6. Had Plaintiff not included these stills, the Court and Officer Jackson would be compelled for now to accept Plaintiff's allegation that Jackson used his thumbs to compress *both* of Plaintiff's carotid arteries. But given Plaintiff's approach to his Complaint, acceptance is no longer required. *See id.* To the extent Jackson used his thumbs for compression, the stills reveal it was isolated to the right side of Plaintiff's neck. The fact that Jackson's alleged conduct involved unilateral pressure undercuts Plaintiff's conclusory allegations about a carotid hold. *See* Mem. at 13-15.

The cases that Plaintiff cites to argue that Jackson engaged in unconstitutional, excessive force are inapplicable. *See Begin v. Drouin*, 908 F.3d 829, 834 (1st Cir. 2018) (deadly force case involving a shooting); *McCue v. City of Bangor*, 838 F.3d 55, 59 (1st Cir. 2016) (excessive force claim where officer placed knee on neck of plaintiff, who was in face-down prone position, while other officer sat on plaintiff's back); *Howe v. Town of N. Andover*, 854 F. Supp. 2d 131, 140 (D. Mass. 2012) (denying plaintiffs summary judgment because jury could conclude force, which included pinning decedent to ground in prone position and putting him in chokehold, was reasonable and necessary). The conduct at issue in those cases bears no resemblance to the

---

[1] Plaintiff contends in his Opposition that Jackson "compressed [Plaintiff's] neck with his hands and thumbs," Opp'n at 18, but that statement is contradicted by his Complaint, Am. Compl. ¶ 51 (stating compression was performed by Jackson using his thumbs).

8

conduct alleged and made plain by the stills Plaintiff included in his Complaint. Officer Jackson purportedly using his thumbs to compress one side of Plaintiff's neck is not comparable to an officer placing his knee on a suspect's neck or putting pressure on the back of a suspect that is in a face-down prone position. Moreover, the stills do not align with a chokehold or carotid restraint. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 97 n.1 (1983). What Plaintiff implicitly seeks is for the Court to hold that Jackson's contact with Plaintiff's neck raises the specter of unconstitutional conduct, but the case law Plaintiff cites makes clear that is not the case. *See e.g.*, *Nolan v. Krajcik*, 384 F. Supp. 2d 447, 454, 468-69 (D. Mass. 2005) (denying summary judgment in excessive force case as to incident outside gymnasium where disputed record reflected defendant had plaintiff in chokehold, but granting defendant summary judgment as to preceding incident where videotape showed defendant "had his arm around the plaintiff's neck" as he moved plaintiff through gymnasium). In short, the excessive force cases Plaintiff cites do not align with the conduct alleged in the Complaint and offer little guidance to the Court to assess the reasonableness or the constitutionality of Jackson's actions.[2]

Although it is Plaintiff's burden to show that the particular right in question was clearly established, the fact that Plaintiff fails to include in his Opposition a single case in which a court determined an officer's actions, remotely comparable to Jackson's purported actions, were excessive force is revealing. Plaintiff heavily relies on cases involving chokeholds, the same label he affixes to Jackson's conduct, but the *conduct* described in those cases simply does not align with the conduct alleged here. *See McCue*, 838 F.3d at 59; *Howe*, 854 F. Supp. 2d at 140; *Renzullo v. Town of Wakefield*, No. 20-cv-11961-DJC, 2023 WL 2276821, at *3 (D. Mass. Feb.

---

[2] Officer Jackson directed the Court to online video, which provides further context for Jackson's actions, but it is not necessary for the Court to consider the videos to determine that Jackson's conduct was reasonable and not violative of a clearly established right. *See* Mem. at 17-19.

28, 2023) (officer "put his knee on the back of [plaintiff's] neck with such force that [plaintiff] could not breathe"); *Tuuamalemalo v. Greene*, 946 F.3d 471, 475 (9th Cir. 2019) (officers took plaintiff to the ground and put him in a lateral vascular neck restraint ("LVNR")[3]); *Coley v. Lucas Cnty.*, 799 F.3d 530, 535 (6th Cir. 2015) (excessive force claim where defendant "grasped [decedent] from behind and placed him in a chokehold"); *Jackson v. Tellado*, 236 F. Supp. 3d 636, 644 (E.D.N.Y. 2017) (excessive force claim where defendant "lifted [plaintiff] up with an ASP baton around his neck"). The actions discussed in these cases do nothing to put Jackson on notice that the actions he took in the situation he confronted were clearly unconstitutional. Plaintiff's invocation of DHS and ICE use of force policies, based on Plaintiff's same faulty premise, is equally unpersuasive. Generalizing and classifying Jackson's conduct does not equate to analyzing his conduct. It is Plaintiff's burden to prove a clearly established right, but none of Plaintiff's cases align with the facts as alleged in the Complaint or what Plaintiff's stills display of Jackson's actions. Consistent with modern Supreme Court precedent, because none of the cases Plaintiff cites contain the requisite "high degree of specificity" necessary to have made it clear to Jackson that his actions violated the Fourth Amendment, Jackson is entitled to qualified immunity. *Zorn v. Linton*, 146 S. Ct. 926, 931 (2026) (per curiam); *see also Velez v. Eutzy*, 152 F.4th 292, 303 (1st Cir. 2025).

For the foregoing reasons, and the reasons provided in Officer David Jackson's Motion to Dismiss, the Court should dismiss Plaintiff's Amended Complaint.

---

[3] *See McCoy v. Meyers*, 887 F.3d 1034, 1040 n.4 (10th Cir. 2018) (discussing the technique as using a "bi-lateral restraint[] . . . intended to affect the circulatory system").

10

## CERTIFICATE OF SERVICE

I, Patrick B. Fenior, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Date: July 10, 2026                    By:      */s/ Patrick B. Fenior*

                                                  PATRICK B. FENIOR
                                                  Trial Attorney
                                                  United States Department of Justice